IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| CENTRAL SOURCE LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:14cv0302 (AJT/JFA) |
| | ) |
| ANNUALCREDITREPORT.COM, | ) |
| an Internet Domain Name, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment. (Docket no. 15). In this *in rem* action, now involving four domain name defendants, plaintiff seeks a default judgment ordering the registry VeriSign, Inc. ("VeriSign") to change the registrar of record for defendant domain names annualcreditredport.com, annualcrfeditreport.com, and annuaqlcreditreport.com from the current registrar, Tirupati Domains and Hosting Private Limited ("Tirupati"), to plaintiff's registrar of choice, GoDaddy.com LLC ("GoDaddy"); that VeriSign change the registrar of record for the defendant domain name annualdreditreport.com from the current registrar, RegisterMatrix.com Corp. ("RegisterMatrix"), to GoDaddy; and that GoDaddy be directed to take necessary steps to have the plaintiff listed as the registrant for all four defendant domain names. (Docket no. 15-1). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On March 21, 2014, Central Source LLC ("Central Source") filed its complaint for *in rem* relief ("Compl.") against seven defendant domain names pursuant to the *in rem* provisions of the

1

Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (Docket no. 1). The prayer for relief in the complaint sought: (1) a judgment in its favor on its claim of cybersquatting; (2) an order directing that the defendant domain names be transferred to Central Source; (3) an order that any other domain names registered by the registrant(s) of the defendant domain names that resemble or include the AnnualCreditReport mark be transferred to Central Source; (4) an award of Central Source's costs and attorney's fees pursuant to 15 U.S.C. § 1117(a); and (5) an award of such other and further relief as the court may deem just and equitable. *Id.*

On March 21, 2014, Central Source sent a letter to the registrant of the defendant domain names, Privacy Protection Service, Inc. d/b/a PrivacyProtect.org, using the e-mail and postal address listed in the WhoIs database for the defendant domain names notifying the registrant that Central Source intended to file this action and attached a copy of the complaint. (Weslow Decl. ¶ 6, Docket no. 5-1). On April 17, 2014, Central Source filed a motion for an order to publish notice of action (Docket no. 4), along with a memorandum in support (Docket no. 5), seeking an order directing it to publish notice of this action once in *The Washington Times* in compliance with the ACPA. On April 21, 2014, an order was entered directing Central Source to provide notice of this action by publication in accordance with the ACPA. (Docket no. 8). The order providing notice of this action was published in *The Washington Times* on April 24, 2014 and on May 12, 2014, Central Source filed with the court an affidavit describing compliance with the order directing publication of notice of this action. (Docket no. 9-1). Other than the claims made by Central Source, no response, claim, or other pleading has been filed asserting any rights in any of the defendant domain names and the 21-day time period provided in the published notice has expired.

On May 29, 2014, Central Source filed a request for entry of default as to the defendant domain names (Docket no. 10) supported by a declaration executed by David E. Weslow stating that no answer or other responsive pleading was filed asserting any rights in any of the defendant domain names (Docket no. 10-1). The Clerk of Court entered default against the defendant domain names on June 4, 2014. (Docket no. 11).

Pursuant to a notice of voluntary dismissal filed on June 12, 2014 (Docket no. 12), the court entered an order dismissing without prejudice the claims against annualcreditrepory.com and annualocreditreport.com on June 16, 2014 (Docket no. 14). Pursuant to a notice of voluntary dismissal filed on June 13, 2014 (Docket no. 13), the court entered an order dismissing without prejudice the claim against annuslcreditreport.com on June 19, 2014 (Docket no. 18).

On June 19, 2014, Central Source filed a motion for default judgment (Docket no. 15) along with a memorandum in support of the motion (Docket no. 16), and a notice of hearing for July 11, 2014 (Docket no. 17). On July 11, 2014, counsel for Central Source appeared at the hearing on the motion for default judgment before the undersigned magistrate judge and no claimant appeared on behalf of the four remaining defendant domain names.

### Factual Background

The following facts are established by the complaint (Docket no. 1) and the memorandum in support of plaintiff's motion for default judgment (Docket no. 16).

Plaintiff Central Source is a Delaware LLC with its principal place of business in Atlanta, Georgia. (Compl. ¶ 2). Central Source states that according to the records in the WhoIs database of domain name registrations, the registrant listed for each of the defendant domain names is Privacy Protection Service Inc. d/b/a PrivacyProtect.org ("PrivacyProtect"). (Comp. ¶¶ 5, 6, 8, 9). Privacy Protect provides a service that replaces a domain name registrant's contact information with PrivacyProtect as the domain name registrant thereby concealing the identity of

3

the true owner of the domain name. (Compl. ¶ 10). Central Source alleges that the defendant domain names were registered by the same person or entity and are under the control of the same person or entity. (Compl. ¶¶ 11, 18).

Central Source was created in 2004 to provide consumers with a secure means to request and obtain a free credit report once every 12 months in accordance with the Fair and Accurate Credit Transaction Act. 15 U.S.C. § 1681j. (Compl. ¶ 19). Central Source provides this service through a website located at <www.annualcreditreport.com> and it is the only site authorized by the U.S. Federal Trade Commission and the Consumer Financial Protection Bureau to provide this service. (Compl. ¶ 20). Central Source registered the annualcreditreport.com domain name on June 25, 2004, and it has registered and now owns over 250 domain names representing typographical errors of AnnualCreditReport as a defensive measure to protect consumers by limiting cybersquatting of domain names related to AnnualCreditReport. (Compl. ¶¶ 21, 22). Central Source began promoting the AnnualCreditReport mark in 2004 and as a result of its promotion by Central Source and the U.S. Trade Commission, along with substantial media coverage, consumers associate the AnnualCreditReport mark with Central Source. (Compl. ¶¶ 23, 24, 27). On June 5, 2012, Central Source obtained Registration Number 4,152,650 for the mark AnnualCreditReport from the United States Patent and Trademark Office, claiming first use in commerce in 2004. (Compl. ¶ 36, Ex. H). This registration is in full force and effect and serves as *prima facie* evidence of the validity of the registered mark, the registration of the mark, Central Source's ownership of the mark, and Central Source's exclusive right to use the mark in connection with the goods or services specified in the registration pursuant to 15 U.S.C. § 1115(a). (Compl. ¶ 37).

Since 2004, there have been over 500,000,000 visits to the website located at annualcreditreport.com. (Compl. ¶ 26). Through the promotion of the AnnualCreditReport mark by Central Source and others, the AnnualCreditReport mark has become distinctive throughout the United States in connection with Central Source's services. (Compl. ¶ 33).

The defendant domain names represent typographical errors of the AnnualCreditReport mark and the registration and use of the defendant domain names reflect a type of cybersquatting known as "typosquatting."[1] (Compl. ¶ 39). The defendant domain names are configured to display pay-per-click advertisements or to redirect visitors to third-party websites for sales solicitations and they appear to have been registered for the purpose of obtaining Internet visitors when a typographical error is made while attempting to type the mark AnnualCreditReport. (Compl. ¶¶ 40, 41). The registrant of the defendant domain names receives advertising and click-through revenue through the use of the defendant domain names. (Compl. ¶ 42). The registrant registered the defendant domain names without Central Source's consent or agreement and has been using those domain names with Central Source's consent or agreement. (Compl. ¶ 43). The defendant domain names do not reflect the legal name of the registrant, and, as they only display advertisements for purposes of generating "click through" revenue to third party companies, they do not constitute the *bona fide* offering of goods or services. (Compl. ¶¶ 44, 45). Central Source contends that the registrant of the defendant domain names registered the domain names with the intent to divert consumers away from Central Source's online location annualcreditreport.com, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of the defendant domain names and the sites displayed through the use of the defendant domain names. (Compl. ¶ 47). Central Source also

---

[1] "A popular subgenera of cybersquatting—termed typosquatting—involves registering a domain name that is but a letter or two off from a distinctive mark." *Green v. Fornario*, 486 F.3d 100, 103 n.5 (3d Cir. 2007).

...

alleges that the defendant domain names are being used to display websites that do not comply with the mandatory disclosure provisions of 15 U.S.C. §1681j(g) and 12 C.F.R. § 1022.138. (Compl. ¶ 49).

Central Source states that it sent a cease and desist letter to PrivacyProtect concerning each of the defendant domain names and that it received a response from PrivacyProtect stating that it would provide the true registrant with the correspondence sent by Central Source. (Compl. ¶¶ 50, 51). Privacy Protect has refused to reveal the identity of the actual registrant of the defendant domain names and Central Source has received no response to its correspondence from the true registrant of the defendant domain names. (Compl. ¶¶ 52, 53).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of anyone to file a responsive pleading or a claim to any of the defendant domain names in a timely manner, the Clerk of Court has entered a default as to each of the defendant domain names. (Docket no. 11).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. Central Source's claims arise under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

The court has *in rem* jurisdiction over the defendant domain names under 15 U.S.C. § 1125(d)(2). The first required element for *in rem* jurisdiction over a domain name exists where the domain name violates any right of the owner of a mark registered with the Patent and Trademark Office. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Central Source owns a federally-registered trademark for the AnnualCreditReport mark and it claims that its rights in that mark are being violated by the registration and use of the defendant domain names.

The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner (a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA or (b) through due diligence cannot find the person who would have been a defendant in such an action, having sent that person postal and electronic notice of both the alleged violation and the owner's intent to sue. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Given that the current registrant of the defendant domain names is unknown given the use of the PrivacyProtect service, Central Source has established that it is unable to obtain personal jurisdiction over the registrant of the defendant domain names who would otherwise have been the defendant in this suit.

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry, or other domain name authority that registered or assigned the domain name is located. VeriSign

7

is the exclusive registry controlling domain names with a top-level domain of <.com>, including each of the defendant domain names, and VeriSign has offices within this district and division. (Compl. ¶ 14).

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over each of the defendant domain names, and that venue is proper in this court.

## Service

David E. Weslow has executed a declaration stating that on March 21, 2014, he sent a notice of violation of the ACPA to the registrant of the defendant domain names at the e-mail and postal addresses on file with the registrars of the defendant domain names in which he stated that it was Central Source's intent to file an *in rem* action and he provided the registrant with a copy of the proposed complaint. (Docket no. 5-1). On April 17, 2014, Central Source filed a motion for an order to publish notice of action. (Docket no. 4). Pursuant to the court's April 21, 2014 order to publish notice of action pursuant to § 1125(d)(2)(A)(ii)(II)(bb) (Docket no. 8), Central Source published notice of this action in *The Washington Times* on April 24, 2014 (Docket no. 9). As set forth in the notice of action, any person claiming an interest in any of the defendant domain names was required to file an answer or other response to the complaint within 21 days from the date of publication of the order in *The Washington Times*. *Id.* The 21-day time period for filing an answer or claim expired on May 15, 2014. *Id.*

The ACPA provides that service of process in an *in rem* action may be accomplished by sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar

and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(B). Central Source has complied with these provisions.

For these reasons, the undersigned recommends a finding that service of process has been accomplished in this action.

### Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a) and as stated in the order of publication, anyone asserting a claim to any of the defendant domain names was required to file an answer or response with the Clerk of Court by May 15, 2014. No responsive pleading or claim was filed by either the named registrant or anyone else claiming ownership of the defendant domain names and on May 29, 2014, Central Source filed a request for entry of default, along with a declaration in support from David E. Weslow. (Docket nos. 10, 10-1). The Clerk entered default as to the defendant domain names on June 4, 2014. (Docket no. 11). Central Source's motion for default judgment and memorandum in support of the motion were filed on June 19, 2014 and noticed for a hearing on July 11, 2014. (Docket nos. 15, 16, 17). Copies of these pleadings were sent to the registrant by mail and e-mail on June 19, 2014. *Id.*

The undersigned magistrate judge recommends a finding that notice of this *in rem* action was provided properly, that no one filed a responsive pleading or claim to any of the defendant domain names in a timely manner, and that the Clerk of Court properly entered a default as to each of the defendant domain names.

### Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

The relief sought in the motion for default judgment, as shown in the proposed order, is an order requiring that the registry VeriSign change the registrar of record for defendant domain names annualcreditredport.com, annualcrfeditreport.com, and annuaqlcreditreport.com from the current registrar Tirupati to plaintiff's registrar of choice GoDaddy; that VeriSign change the registrar of record for the defendant domain name annualdreditreport.com from the current registrar RegisterMatrix to plaintiff's registrar GoDaddy; and that GoDaddy be directed to take necessary steps to have the plaintiff listed as the registrant for the four defendant domain names. (Docket no. 15-1). The notice that was published pursuant to the ACPA provided that one of the remedies available under the ACPA is the transfer of the defendant domain names to Central Source in this action. (Docket nos. 8, 9).

To state a claim under the ACPA, Central Source must prove that each of the defendant domain names and/or the registrant registered, trafficked in, or used the domain name with a bad faith intent to profit and that the domain name is either identical or confusingly similar to a distinctive mark owned by Central Source, or, upon a finding that a mark owned by Central Source is famous, that the domain name is identical or confusingly similar to, or dilutive of, Central Source's famous mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The registration for the AnnualCreditReport mark on the Principal Register is *prima facie* evidence that the mark is at least descriptive and has acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Further, secondary meaning is typically found where there are extensive advertising expenditures, sales successes, attempts to plagiarize a mark, and where a mark has been used exclusively for an extended period of time. *See, e.g., Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 125 (4th Cir. 1990).

Here, Central Source has obtained a federal registration for the AnnualCreditReport mark. (Compl. ¶ 36). Central Source states that it has used the AnnualCreditReport mark in interstate commerce in connection with its goods and services, since at least as early as November 30, 2004. (Compl. ¶ 25). Based on the continuous use of the AnnualCreditReport mark for almost ten years in connection with Central Source's highly publicized and successful business, Central Source asserts that the AnnualCreditReport mark has attained widespread public recognition and has become identified exclusively with Central Source's goods and services in the minds of consumers. (Compl. ¶ 23-27). For these reasons, the undersigned recommends a finding that the AnnualCreditReport mark is at least distinctive.

The next consideration is whether each of the defendant domain names is identical or confusingly similar to the AnnualCreditReport mark. Based on the uncontested allegations in the complaint, the undersigned magistrate judge recommends a finding that each of the defendant domain names is confusingly similar to the AnnualCreditReport mark. Further, the registration and use of the defendant domain names is likely to cause confusion among the public, including customers of Central Source, because the "dominant or salient portions" of the defendant domain names and the AnnualCreditReport mark are identical. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Accordingly, "a finding of likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (finding that the addition of generic geographic terms to plaintiff's registered mark did not distinguish the defendant domain names from the registered marks) ("An internet user might reasonably assume that the geographic term 'CASPIAN' and 'IRAN' were added to the ATLAS COPCO trademark by the Plaintiffs to identify its geographic location.").

11

In this case, each of the defendant domain names includes a misspelling of the distinctive AnnualCreditReport mark. The misspelling of the AnnualCreditReport mark constitutes a clear attempt at typosquatting of the AnnualCreditReport mark insofar as omitting or inserting a letter or letters from the word "AnnualCreditReport," altering the order of the letters in the word "AnnualCreditReport," or substituting a different letter in the word "AnnualCreditReport" takes advantage of common errors made in typing by consumers when attempting to reach <annualcreditreport.com>. Based on a simple comparison of the AnnualCreditReport mark and the defendant domain names, it seems that any use of the defendant domain names by someone other than Central Source could cause confusion. Thus, Central Source has shown that the defendant domain names are confusingly similar to the AnnualCreditReport mark.

Having recommended a finding that the AnnualCreditReport mark is distinctive and that the defendant domain names are confusingly similar to the AnnualCreditReport mark, the remaining question is whether the defendant domain names were registered or used with bad faith intent to profit. For at least the following reasons, the undersigned recommends a finding that the defendant domain names were registered and used with the bad faith intent to profit from the AnnualCreditReport mark:

1. The AnnualCreditReport mark, which has been incorporated into the domain names as common misspellings, is distinctive within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(IX);

2. The registrant of the defendant domain names does not have any valid trademark or intellectual property rights in the AnnualCreditReport mark or the defendant domain names within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(I);

3. It appears that the defendant domain names do not consist of the registrant's legal name, nor do they in any way identify the registrant within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(II);

4. The registrant of the defendant domain names has not used the defendant domain names in connection with the *bona fide* offering of any goods or services within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(III) since the registrant does not have any right to use the AnnualCreditReport mark and the defendant domain names are not being used to sell Central Source's goods and services, the only *bona fide* use of the AnnualCreditReport mark;

5. The registrant has not used the defendant domain names for *bona fide* noncommercial purposes or within the fair use provisions of 15 U.S.C. § 1125(d)(1)(B)(i)(IV);

6. The registrant's intent in obtaining and maintaining the registrations for the defendant domain names and using these domain names, was to divert Central Source's customers and profit from the goodwill of the AnnualCreditReport mark, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V); and

7. The registrant has registered or acquired more than one domain name known to be confusingly similar to the marks of others within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(VIII) as shown by the various domain names involved in this action.

The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner. 15 U.S.C. § 1125(d)(1); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002) ("Transfer or cancellation of the defendant domain name[] is the only remedy available under § 1125(d)(2)'s *in rem* provision").

13

For these reasons, the undersigned recommends a finding that the registrant's actions have violated the ACPA. The undersigned further recommends that an order be entered requiring VeriSign to change the registrar of record for defendant domain names annualcreditredport.com, annualcrfeditreport.com, and annuaqlcreditreport.com from the current registrar Tirupati to plaintiff's registrar GoDaddy; that VeriSign change the registrar of record for the defendant domain name annualdreditreport.com from the current registrar RegisterMatrix to plaintiff's registrar GoDaddy; and that GoDaddy be directed to take necessary steps to have the plaintiff listed as the registrant for all of the defendant domain names.

## Conclusion

For these reasons, the undersigned magistrate judge recommends that a default judgment be entered in favor of Central Source LLC and against the remaining four defendant domain names. The undersigned further recommends that the court enter an order requiring VeriSign, Inc. to change the registrar of record for defendant domain names annualcreditredport.com, annualcrfeditreport.com, and annuaqlcreditreport.com from the current registrar Tirupati Domains and Hosting Private Limited to plaintiff's registrar GoDaddy.com LLC; that VeriSign, Inc. change the registrar of record for the defendant domain name annualdreditreport.com from the current registrar RegisterMatrix.com Corp. to plaintiff's registrar GoDaddy.com LLC; and that GoDaddy.com LLC be directed to take necessary steps to have the plaintiff listed as the registrant for all four of the defendant domain names.

## NOTICE TO PARTIES

Failure to file written objections to these proposed findings of fact and recommendations within 14 days after being served with a copy of the proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of the proposed

Case 1:14-cv-00302-AJT-JFA Document 20 Filed 07/11/14 Page 15 of 15 PageID# 188

findings and recommendations and such failure shall bar you from attacking on appeal any finding or conclusion accepted and adopted by the District Judge except upon grounds of plain error. A copy of these proposed findings of fact and recommendations shall be sent to the registrant of the defendant domain names at Privacy Protection Service Inc. d/b/a Privacy Protect.org, C/O ID#10760, P.O. Box 16, Nobby Beach, Queensland QLD 4218, Australia.

Entered this 11th day of July, 2014.

                                             /s/
                                  John F. Anderson
                                  United States Magistrate Judge

Alexandria, Virginia

15